UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY LYNN TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 2:26-cv-00181-WBS-CSK (SS)<br><br>FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 10, 12) |

Plaintiff Stacy Lynn Taylor seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for supplemental security income.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, the Court recommends that Plaintiff's motion be GRANTED IN PART and DENIED IN PART, the Commissioner's cross-motion be GRANTED IN PART and DENIED IN PART, and the final decision of the Commissioner is REVERSED and REMANDED.

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) for the issuance of findings and recommendations. See Local Rule 304.

## I. SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review

of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II. FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On June 29, 2022, Plaintiff Stacy Lynn Taylor filed an application for supplemental security income under Title XVI of the Social Security Act. Administrative Transcript ("AT") 232-48 (ECF No. 9). Plaintiff's application alleged disability dating to 2007 and illnesses such as swelling and pain in her right knee, endometriosis pain, right shoulder pain, and rotator cuff surgery. AT 234. Plaintiff's claims were denied initially and upon reconsideration, and she sought review before an administrative law judge ("ALJ"). AT 114-15, 150. Plaintiff appeared by audio with representation at a hearing before an ALJ

on March 11, 2025, where Plaintiff testified about her impairments and a vocational expert ("VE") testified about hypothetical available jobs in the national economy. AT 42-70.

On April 22, 2025, the ALJ issued an opinion finding Plaintiff not disabled. AT 14-37. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 29, 2022, the application date. AT 20. At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: bilateral knee arthritis, anxiety, and depression. AT 20-22. At step three, the ALJ concluded that none of Plaintiff's severe impairments meet or medically equals the severity of any listing. AT 22-26 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered listing 1.18 (Abnormality of a major joint in any extremity) for Plaintiff's physical impairments, and listings 12.04 (Depressive, bipolar, and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders) for Plaintiff's mental impairments.[2]

The ALJ concluded that Plaintiff had moderate limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting and maintaining pace, and a mild limitation in adapting or managing oneself. AT 25. The ALJ also evaluated whether Plaintiff's impairments met "Paragraph C" criteria and concluded Plaintiff's mental impairments were not "serious and persistent," meaning, they resulted in "marginal adjustment or a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's life,

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.

"Paragraph C" sets the criteria for "serious and persistent mental disorders," requiring a showing of medically documented history of the existence of the disorder for a period of at least two years. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.c.

despite ongoing medical treatment, over a period of at least two years." AT 26.

Next, the ALJ found Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff] is able to lift and/or carry, push and/or pull, 20 pounds occasional, 10 pounds frequently, with unlimited sitting, standing and walking, but with the following limitations: frequent right overhead reaching; occasional climbing of ramps or stairs; balancing stooping, kneeling, crouching, and crawling; no climbing of ladders and scaffolds; and she is limited to simple tasks with occasional public contact.

AT 26. In making this finding, the ALJ considered Plaintiff's symptoms "to the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence," medical opinions, and prior administrative findings. *Id*.

Evaluating the medical opinions on Plaintiff's physical limitations, the ALJ concluded that the medical opinion testimonies of state agency medical consultants Dr. E. Trias, M.D. and Dr. Hunter to be persuasive. AT 34 (citing AT 103-06, 120-21). Both doctors concluded that Plaintiff was: (1) capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; (2) standing and/or walking six hours in an eight-hour workday; (3) sitting six hours in an eight-hour workday; occasional postural activities, except for unlimited balancing and frequent stooping; (4) and frequent right overhead reaching. *Id*. The ALJ concluded that these opinions were supported by the objective medical evidence, which includes x-rays, MRI, physical and neurological examinations of Plaintiff, documented reports, Plaintiff's conservative treatment, and the objective medical record. AT 34.

Regarding Plaintiff's mental limitations, the ALJ concluded that the opinions of state agency medical consultants Dr. L. Colsky, M.D. and Dr. Joseph Leizer, Ph.D., were also persuasive. AT 34-35. Dr. Colsky opined that Plaintiff had moderate limitations in understanding, remembering, or applying information and interacting with others, had a mild limitation in concentrating, persisting, and maintaining pace, and no limitation in adapting and managing oneself. AT 34 (citing AT 101). The ALJ found Dr. Colsky had also concluded that Plaintiff was capable of unskilled tasks, maintaining concentration,

persistence or pace over a normal workweek, would do best with limited public contact, can adapt to routine and predictable changes in the workplace, and would do best in a low stress environment without changing demands or quotas. *Id*. (citing AT 107-110).

Dr. Leizer concluded that Plaintiff had moderate limitations in understanding, remembering, or applying information, interacting with others, and with concentrating, persisting, and/or maintaining pace, and no limitation in adapting or managing oneself. AT 34 (citing AT 119). Dr. Leizer also found that Plaintiff was capable of simple, unskilled tasks, maintaining concentration, persistence, or pace over a normal workweek, and would do best with limited public contact. *Id*. (citing AT 122-23).

The ALJ concluded that because Dr. Leizer's assessment was more recent than Dr. Colsky's assessment, Dr. Leizer's opinions were more persuasive, but ultimately there was no material difference between the two. AT 34-35. The ALJ further concluded that the opinions were supported by and consistent with a lack of documented mental health complaints and lack of formal mental health treatment in the record. AT 35.

Next, the ALJ found the opinion of Dr. Gena Clark-McKnight, who performed a mental status evaluation at the request of the California Department of Social Services on December 1, 2022 to be partially persuasive. AT 35 (citing AT 671-78). Dr. Clark-McKnight opined that Plaintiff had no limitations performing simple, repetitive tasks, mild limitations accepting instructions from supervisors, moderate limitations in maintaining regular attendance, performing work on a consistent basis, performing work activities without special or additional supervision, completing a normal workday or workweek, and dealing with the usual stresses encountered in a competitive work environment, and a marked limitation interacting with co-workers and the public. *Id*. (citing AT 674-75). The ALJ agreed with Dr. Clark-McKnight's opined moderate limitations but not with her marked limitation, finding that her opinion was based on Plaintiff's self-reports, and that Plaintiff's mental status evaluation was unremarkable outside of a finding of impaired attention and concentration. AT 35. As above, the ALJ concluded that there were few treatment records of significant mental health issues or formal mental health treatment,

and that Plaintiff had just begun therapy prior to her ALJ hearing. *Id*.

Based on the RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work. *Id*. However, at step five, the ALJ determined that Plaintiff was capable of performing other jobs in the national economy, including: (1) marker, Dictionary of Occupational Titles ("DOT") # 209.587-034, light, SVP 2, with 167,000 available in the national economy; (2) routing clerk, DOT # 222.687-022, light, SVP 2, with 122,000 jobs available in the national economy; and (3) cleaner housekeeping, DOT # 323.687-014, light, SVP 2, with 190,000 jobs available in the national economy.[3] AT 36. Thus, the ALJ concluded Plaintiff was not disabled. AT 36-37. On January 7, 2026, the Appeals Council denied Plaintiff's appeal. AT 1-6. Plaintiff filed this action seeking judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 10, 12.)

## III. ISSUES PRESENTED FOR REVIEW

Plaintiff contends that the ALJ erred by: (1) discounting Plaintiff's subjective symptom testimony without clear and convincing evidence; (2) failing to explain his departures from the medical opinion testimonies of Dr. Clark-McKnight and Dr. Colsky; and (3) failing to assess the opinion of Mr. Cormier. Pl. Mot. at 6-15 (ECF No. 10).

In contrast, Defendant argues that: (1) the ALJ properly evaluated Plaintiff's subjective symptom testimony; (2) the ALJ properly considered the medical opinion testimonies of Dr. Clark-McKnight and Dr. Colsky; and (3) the ALJ did not need to assess Mr. Cormier's statements, as they were not medical opinions. Def. Mot. at 3-14 (ECF No. 12).

/ / /

/ / /

[3] "Light" in the ALJ's step-five determination references medium work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b).
"SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." See DOT, App. C, § II, available at 1991 WL 688702.

# IV. DISCUSSION

## A. Subjective Symptom Testimony

### 1. Legal Standards

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds to be not credible and … explain what evidence undermines the testimony." *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Comm. of Soc. Sec. Admin*., 775 F.3d 1090, 1102 (9th Cir. 2014)). Boilerplate statements and general summaries of the evidence, without more, are not enough. *Id*. at 1277-78. That said, an ALJ is not required "to perform a line-by-line

exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Id*. at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. *Lambert*, 980 F.3d at 1277-78.

2. Analysis

a. *Physical Allegations*

Plaintiff argues the ALJ erred in evaluating Plaintiff's subjective symptom testimony regarding her allegations regarding her physical impairments by: (1) inadequately connecting inconsistencies with the objective medical record to Plaintiff's testimony; (2) concluding objective medical record itself supported Plaintiff's testimony; (3) finding Plaintiff's treatment was conservative; and (4) failing to take into account Plaintiff's obesity. Pl. Mot. at 6-8.

Conversely, Defendant argues that: (1) the ALJ properly found that the objective medical evidence contradicted Plaintiff's subjective symptom testimony; (2) the ALJ sufficiently explained the inconsistencies with Plaintiff's testimony and the administrative record; and (3) Plaintiff's treatment was conservative. Def. Mot. at 4-9.

Plaintiff argues that the ALJ erred in finding that Plaintiff's treatment was conservative, and thus, undermining her subjective symptom testimony due to her worsening progression of symptoms over the adjudicatory period and highlighting of Plaintiff's use of cortisone shots for treatment. Pl. Mot. at 7-8. When analyzing Plaintiff's subjective symptom testimony, the ALJ referenced the following regarding her physical symptoms: Plaintiff testified she had osteoarthritis of the knee, restless leg syndrome, and numbness in her right hand. AT 27. Plaintiff testified she was due for another right knee surgery and had used cortisone shots, which did not help her physical pain. *Id*. Plaintiff testified she took medication daily and nightly for swelling and pain and that her use of medications brought her knee pain down to a 7/10 pain level. *Id*. Plaintiff also testified she used a walker and cane which she does not use often. *Id*. The ALJ later

concluded that Plaintiff's treatment was routine and conservative. AT 34.

In *Smartt v. Kijakazi*, the Ninth Circuit concluded that an ALJ did not err in concluding conservative treatment where the record documented of physical therapy, temporary use of a neck brace and wheelchair, and ongoing use of physical medication, having shown "self-reported and objective improvement." 53 F. 4th 489, 500 (9th Cir. 2022). Here, the ALJ's analysis focuses on treatment of Plaintiff's right knee rather than her right-hand issues, restless leg syndrome, headaches, or shoulder, and does not indicate Plaintiff's physical symptoms improved. AT 28-31.

The ALJ described Plaintiff's "primary impairment" as osteoarthritis of the right knee. AT 28. An August 15, 2022 record described Plaintiff's treatment history as using over-the-counter medication, ice, shoe inserts, elevation, and previous cortisone injections. AT 29 (citing AT 424). Plaintiff later injured her right knee and sought evaluation on October 7, 2022. AT 30 (citing AT 431). Plaintiff's treatment at the time was bracing, physical therapy, and use of Meloxicam. *Id*. Plaintiff continued to complain of right knee pain on primary care follow-ups dated April 13, 2023, August 31, 2023, January 11, 2024, and February 14, 2024. AT 30-31 (citing AT 748, 735, 796). Notably, on Plaintiff's February 14, 2024 appointment, Plaintiff described her pain as "10 out of 10." AT 30 (citing AT 796). At a follow-up appointment on August 12, 2024, Plaintiff described her right knee symptoms as "unchanged and worse" and between a "7-9." AT 31 (citing AT 800). Last, a progress record on February 18, 2025 described Plaintiff's right knee pain as "significant" and that Plaintiff elevates her knee and rests one to two hours daily. AT 31 (citing AT 998). Here, the record shows that Plaintiff's pain was consistent and worsening throughout the adjudicatory period, and the ALJ has failed to tie any of Plaintiff's treatment to an amelioration of symptoms. Therefore, the Court finds that the ALJ lacks substantial evidence to conclude conservative treatment was a clear and convincing reason to discount Plaintiff's subjective symptom testimony and need not address Plaintiff's argument regarding cortisone injections. *See Garrison v. Colvin*, 759 F. 3d 995, 1014 (9th Cir. 2014) (finding ALJ lacked support in administrative record for

conservative treatment where records showed “unabated” “incredible pain.”).

Next, the ALJ appears to discount Plaintiff’s subjective symptom testimony based on her reporting “a full range” of daily living activities. AT 29. The ALJ referenced Plaintiff’s testimony where she alleged having no problems with personal care, caring for her dogs, doing laundry, and cleaning her home while taking breaks. AT 29, 33 (citing AT 673). Plaintiff also testified that she journals and spends time completing her therapy homework. *Id*. “Even if the claimant experiences some difficulty or pain, her daily activities ‘may be grounds for discrediting the claimant’s testimony to the extent that they contradict claims of a totally debilitating impairment.’” *Smartt v. Kijakazi*, 53 F. 4th 489, 499 (9th Cir. 2022) (quoting *Molina v. Astrue*, 674 F. Supp. 3d 1104, 1113 (9th Cir. 2011) *superseded on other grounds by regulation*). While the ALJ lists Plaintiff’s reported activities, he fails to connect them to Plaintiff’s testimony and articulate how he concludes these activities have capabilities transferrable to a work setting. *Molina*, 674 F. Supp. 3d, 1113. (citing *Morgan v. Comm’r Soc. Sec. Admin*., 169 F. 3d 595, 600 (9th Cir. 1999); *Fair v. Bowen*, 885 F. 2d 597, 603 (9th Cir. 1989)). “A claimant need not ‘vegetate in a dark room’ in order to be eligible for benefits. *Id*. (quoting *Cooper v. Bowen*, 815 F. 2d 557, 561 (9th Cir. 1987) (internal quotations omitted)). Thus, the Court concludes that the ALJ’s determination that Plaintiff’s daily activities were clear and convincing grounds to discount Plaintiff's subjective symptom testimony for her physical symptoms were not supported by substantial evidence.

Additionally, Plaintiff argues the ALJ erred in failing to take her obesity into consideration. Pl. Mot. at 8. In *Celaya v. Halter*, the Ninth Circuit found that an ALJ committed reversable error by failing to evaluate the impact of a plaintiff’s obesity on her other physical impairments. 332 F. 3d 1177, 1182 (9th Cir. 2003). Here, while the ALJ references Plaintiff’s obesity and BMI a few times throughout the analysis of the objective medical record, there does not appear to be a discussion on how Plaintiff’s obesity interacts with her other impairments. AT 29-31. Therefore, the Court finds that the ALJ erred by not considering Plaintiff’s obesity in the RFC determination and grants

Plaintiff summary judgment on this issue. *See Lisa M. v. Bisignano*, 2026 WL 2395232, at *6 (E.D. Wash. Aug. 17, 2026) (finding an ALJ erred by referencing a plaintiff's BMI throughout the record but failing to analyze its interaction with the plaintiff's impairments).

The ALJ's remaining reason for discounting Plaintiff's subjective symptom testimony is due to a lack of consistency with the objective medical evidence. AT 28-34. The ALJ may not rely on inconsistency with the objective medical evidence as the sole reason for discounting Plaintiff's testimony. *Burch v. Barnhart*, 400 F. 3d 676, 680 (9th Cir. 2005).

Even if the Court did not find the ALJ erred in evaluating Plaintiff's conservative treatment and daily activities, the ALJ's examination of the objective medical record does not explain how these records undermine Plaintiff's testimony and instead provides a boilerplate conclusion that Plaintiff's allegations are "not entirely consistent with the evidence." AT 28. This is not sufficient to meet the minimal requirements for assessing credibility, and the Court concludes the ALJ erred in his treatment of the objective medical evidence. *See Lambert*, 980 F.3d at 1277-78. The Court need not address Plaintiff's other arguments.

An ALJ failing to specify their reasons for finding claimant testimony not credible is typically not harmless error. *See Treichler*, 775 F. 3d at 492. Therefore, the Court recommends remanding for further administrative proceeding and granting Plaintiff summary judgment on this issue.

b. *Mental Allegations*

Plaintiff argues the ALJ erred in evaluating Plaintiff's mental allegations due to: (1) Plaintiff's ongoing complaints of anxiety; (2) Plaintiff not being able to seek counseling due to problems with her insurance; and (3) improperly assessing Plaintiff's daily activities. Pl. Mot. at 8-10. Defendant counters that: (1) Plaintiff's mental symptoms were treated with routine, conservative treatment; and (2) undermined by Plaintiff's daily activities. Def. Mot. at 9-11.

Upon review, the Court finds the ALJ never concluded Plaintiff's mental health symptoms improved with treatment. The ALJ referenced treatment records that showed Plaintiff's use of 50 milligrams of trazodone per night helped her with mood stability and insomnia, but Plaintiff still complained of having difficulty sleeping due to chronic anxiety and a mood disorder. AT 32 (citing AT 748). The ALJ also referenced records that Plaintiff was prescribed 0.5 milligrams of lorazepam, but that there was no other evidence in the record of mental health treatment. *Id*. (citing AT 767, 762, 752).

Additionally, the ALJ references Plaintiff's daily activity testimony where she alleged having no problems with personal care, caring for her dogs, doing laundry, and cleaning her home while taking breaks, journaling, and completing therapy homework. AT 33 (citing AT 673). For the reasons stated above, the ALJ lacked substantial evidence to conclude that Plaintiff's daily activities were clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

Additionally, the ALJ's analysis of conflicts with the objective medical record for Plaintiff's mental allegations suffers from the same defects as Plaintiff's physical allegations for being the sole remaining reason for discounting Plaintiff's subjective symptom testimony and failing to specify reasons to find Plaintiff's testimony to be not credible. AT 32-33; *see Burch,* 400 F. 3d, at 680; *see also Treichler*, 775 F. 3d at 492. Therefore, the Court recommends remanding for further administrative proceeding and granting Plaintiff summary judgment on this issue.

**B. Medical Opinion Testimony**

1. <u>Legal Standards</u>

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC" (residual functional capacity). *Rounds v. Comm'r Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor

and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." *Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022) (citing *Hardy v. Commissioner*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

2. <u>Analysis</u>

a. *Dr. Clark-McKnight*

Plaintiff alleges that the ALJ erred in diverting from Dr. Clark-McKnight's medical opinion testimony by failing to incorporate Plaintiff's moderate limitations regarding attendance for a workday and 40-hour workweek, performing work activities on a consistent basis, completing a normal workday or workweek, and performing work activities without special or additional supervision into the RFC. Pl. Mot. at 10-13.

Defendant argues that Plaintiff has waived the argument by not challenging the ALJ's reasoning behind his findings. Def. Mot. at 11-12. However, if the arguments are not waived, the ALJ properly considered Dr. Clark-McKnight's opinion. *Id*. at 12-13.

As a preliminary matter, the Court disagrees with Defendant's contention that Plaintiff waived his arguments regarding Dr. Clark-McKnight and Dr. Colsky's incorporation into the RFC by not first challenging the ALJ's evaluation of their persuasiveness. "If an RFC assessment failed to include all of [Plaintiff's] credible limitations, the RFC – and any subsequent opinion of a vocational expert – are incomplete." *Warren S. v. Saul*, 2021 WL 259435, at *4 (C.D. Cal. Jan. 26, 2021) (quoting *Bagby v. Comm'r Soc. Sec*., 606 F. Appx. 888, 890 (9th Cir. 2014); *DeLorme v. Sullivan*, 924 F. 2d 841, 849 (9th Cir. 1991)) (internal quotations omitted). Thus, the Court proceeds with evaluating Plaintiff's arguments.

As stated above, the ALJ found Dr. Clark-McKnight's opinion to be partially persuasive, agreeing with the opined moderate limitations. AT 35. Plaintiff's RFC limits her to simple tasks with occasional public contact, but does not include moderate limitations in maintaining regular attendance, performing work on a consistent basis, performing work activities without special or additional supervision, completing a normal workday or work week, and dealing with the usual stresses encountered in a competitive work environment.AT 26, 35. "Although caselaw in this circuit is split as to what limitations are addressed by an RFC that includes a restriction to 'simple repetitive tasks,' most courts 'favor the view that a restriction to simple/routine tasks is not a catchall.'" *Prolux v. Kijakazi*, 2023 WL 5737785, at *6 (S.D. Cal. Sept. 5, 2023) (quoting *de Los Santos v. Kijakazi*, 2022 WL 1541464, at *6 (E.D. Cal. May 16, 2022)). Courts have found that a limitation to simple tasks does not account for attendance-related limitations or limitations for completing an eight-hour workday. *See Panziera v. Berryhill*, 2018 WL 278623, at *20-21 (N.D. Cal. Jan. 3, 2018) (citing *Scott v. Colvin*, 2015 WL 11438598, at *7 (N.D. Cal. Dec. 9, 2015); *Warren S.*, 2021 WL 259435, at *5. Therefore, the Court concludes the ALJ erred by failing to incorporate Dr. Clark-McKnight's findings

into the RFC or without providing a legally sufficient reason for its rejection. *See Warren*, 2021 WL 259435, at *7. The Court also finds that remand is necessary to evaluate Dr. Clark-McKnight's opinion and recommends granting Plaintiff summary judgment on this issue.

b. *Dr. Colsky*

Plaintiff further argues that the ALJ erred in his assessment of Dr. Colsky's medical opinion testimony. Pl. Mot. at 13-14. Plaintiff contends that the RFC does not accommodate Dr. Colsky's finding that "Plaintiff would do best in a low-stress environment without changing demands or quotas." *Id*. at 13 (quoting AT 109). Conversely, Defendant argues that the ALJ need not adopt medical expert testimony word-for-word. Def. Mot. at 12-13 (quoting *Kitchen v. Kijakazi*, 82 F. 4th 732, 739 (9th Cir. 2023).

As stated above, the ALJ weighed Dr. Colsky's medical opinion testimony with Dr. Leizer, the other state agency doctor. AT 34. The ALJ found Dr. Leizer's medical opinion testimony to be more persuasive than Dr. Colsky's but concluded that "there is no significant or material difference between the two." AT 34-35. While Plaintiff references courts in the Ninth Circuit stating that an RFC limited to simple tasks does not incorporate opined limitations to respond to changes in a work setting, the courts in these cases found error in a failure to incorporate moderate limitations into the RFC. Pl. Mot. at 13-14; *see Bagby v. Comm'r of Soc. Sec*., 606 Fed. Appx. 888, 890 (9th Cir. 2015); *see also John S. v. Saul*, 2020 WL 5880462, at *3 (C.D. Cal. Oct. 2, 2020). Here, Dr. Colsky found that Plaintiff was not significantly limited in *any* adaptation limitation. AT 109. Thus, the Court finds that unlike the opinion of Dr. Clark-McKnight, the ALJ did not err by not incorporating Dr. Colsky's limitation into the RFC because there was nothing to separately incorporate. Therefore, the Court recommends granting summary judgment in favor of Defendant on this issue.

c. *Mr. Cormier*

Plaintiff also contends the ALJ erred in failing to assess the opinion of Mr.

Cormier, a physician's assistant who evaluated Plaintiff at her February 18, 2025 follow-up appointment. Pl. Mot. at 14-15. Defendant responds that Mr. Cormier's statements are not medical opinions and the ALJ did not err in his evaluation. Def. Mot. at 13-14.

The ALJ references Plaintiff's February 18, 2025 appointment in his examination of the objective medical record and mentions that at this appointment, Plaintiff reported she needed to elevate her knee one to two hours a day, and that she was recommended to avoid heavy exertion and wear knee support. AT 32 (citing AT 996, 998). Current Social Security regulations define medical opinions as statements from medical sources about what petitioners can still do despite their impairments and whether they have impairment-related limitations or restrictions in sitting, standing, walking, carrying, pushing, pulling, or other physical functions. *See* 20 C.F.R. § 404.1513. Defendant argues both statements are not medical opinions as defined in this section. Def. Mot. at 13-14. First, Defendant argues that the recommendation that Plaintiff keep her knee elevated two hours a day and to wear knee support was not an opinion as to what Plaintiff could do despite her limitations. Def Mot. at 13 (citing AT 996). Second, Defendant argues that the remarks that Plaintiff had continued to experience swelling in her right knee and needed to elevate her knee one to two hours daily was within the "history of present illness" section of her report, which reflected what Plaintiff told Mr. Cormier. Def. Mot. at 14 (citing AT 998).

Upon review of Mr. Cormier's record, the Court agrees with Defendant. The Court finds that Mr. Cormier's recommendation that Plaintiff elevate her leg two hours a day, avoid heavy exertion, and wear knee support is less an opinion of whether Plaintiff "is incapable of work except under the required conditions," but rather a "recommended way for [Plaintiff] to cope" with symptoms in her right knee. *See Valentine v. Commissioner Soc. Sec. Admin*, 574 F. 3d 685, 691-92 (9th Cir. 2009) (finding an ALJ did not err from excluding a recommendation from an RFC under similar circumstances in a case governed by prior regulations). Thus, the Court concludes the ALJ did not err from its exclusion from the RFC and recommends granting summary judgment in favor of

Defendant on this issue.

## V. CONCLUSION

In conclusion, the Court recommends granting summary judgment in favor of Plaintiff on the following issues, finding (1) the ALJ erred in discounting Plaintiff's subjective symptom testimony; and (2) the ALJ erred in failing to incorporate Dr. Clark-McKnight's moderate limitations into the RFC. The Court recommends granting summary judgment in favor of Defendant on the following issues, finding: (1) the ALJ properly did not incorporate Dr. Colsky's narrative limitations into the RFC; and (2) the ALJ properly evaluated Mr. Cormier's recommendation.

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler,* 775 F.3d, at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether Plaintiff was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the

record as needed but must sufficiently analyze whether there are clear and convincing reasons for discrediting Plaintiff's testimony and whether Dr. Clark-McKnight's opined moderate limitations were properly incorporated into the RFC. The Court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The Court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find Plaintiff disabled during the entirety of the relevant period; may find Plaintiff eligible for some type of closed period of disability benefits; or may find that Plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

## FINDINGS AND RECOMMENDATIONS

Accordingly, the Court RECOMMENDS:

1. Plaintiff's motion for summary judgment (ECF No. 10) is GRANTED IN PART and DENIED IN PART
2. The Commissioner's cross-motion (ECF No. 12) is GRANTED IN PART and DENIED IN PART
3. The final decision of the Commissioner is REVERSED and REMANDED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: October 14, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, tayl.0181.ss.msj